**HANSON et al. v. PRATT.**

**No. 11011.**

Court of Civil Appeals of Texas. Dallas.

May 28, 1932.

Rehearing Denied July 5, 1932.

Head, Dillard, Maxey-Freeman, McReynolds & Hay, N. B. Birge, and Hamp P. Abney, all of Sherman, for appellants.

Reasonover & Reasonover and P. G. Peurifoy, all of Dallas, for appellee.

LOONEY, J.

H. C. Hand owned 103 acres of land situated seven miles east of Sherman, Grayson county, burdened with vendor's lien notes aggregating $2,350 held by L. C. Gee, also a second lien note for $350 held by Mrs. Clara Hanson; J. O. Pratt owned two lots situated in Hampton addition (Oak Cliff), city of Dallas, each incumbered to the extent of $250. Hand, represented by Paul Butler as agent, and Pratt, represented by W. D. Arnspiger, agent, agreed in writing to exchange these lands, each party to convey to the other "subject to said indebtedness." The trade, however, was never consummated, for the reason that the deed tendered by Hand obligated Pratt to assume payment of the incumbrances existing upon the land. Arnspiger, acting for Pratt, rejected the deed, returned it to Butler (Hand's agent), who endeavored without success to induce Hand to correct the deed in harmony with the original agreement. In this status, on September 18, 1929, L. C. Gee instituted suit (cause No. 40615 on the docket of the district court of Grayson county) against H. C. Hand on the notes, against J. O. Pratt on the alleged assumption of the payment of the notes, and against Mrs. Clara Hanson, holder of the second lien, asking for judgment and foreclosure of his vendor's lien on the 103 acres, alleging that Pratt had purchased the land from Hand and assumed payment of the notes. Mrs. Hanson filed a cross-action against Pratt and Hand, and Hand filed a cross-action against Pratt, based upon Pratt's alleged assumption of the incumbrances upon the 103 acres of land. Pratt was duly cited, but failed to answer, and on January 17, 1929, judgment by default was rendered against him, based upon said alleged assumption, in favor of Gee for $2,805.21 and in favor of Hand and Mrs. Hanson for $405. Execution issued on the judgment in favor of Mrs. Hanson was placed in the hands of H. A. Hood, sheriff of Dallas county, who levied same upon certain real estate in the city of Dallas belonging to Pratt and posted notices for its sale to take place the first Tuesday in July, 1930; thereupon Pratt instituted this suit in the nature of a bill of review against L. C. Gee, H. C. Hand, Mrs. Clara Hanson, and H. A. Hood, sheriff, to review and set aside the judgments by default rendered against him in cause No. 40615 (Gee v. Hand et al.), also sought and obtained a temporary writ of injunction restraining the sheriff of Dallas county from selling the land levied upon pending final trial, and upon a trial before the court without a jury the judgments by default theretofore rendered against Pratt in favor of Mrs. Hanson and H. C. Hand were set aside, vacated, and the temporary writ of injunction issued was perpetuated (judgment by default against defendant Gee), from which H. C. Hand and Mrs. Hanson appealed.

The essence of the propositions urged by appellants for reversal is that appellee failed to either allege or prove the elements necessary to invoke the equitable remedy of review; therefore the court erred in rendering judgment in his favor.

That appellee showed a meritorious defense to the action and cross-actions (based upon the alleged assumption agreement) is beyond controversy, and as touching other phases he alleged that "he was reliably informed by Paul Butler, agent and attorney in fact of H. C. Hand, that the plaintiff and other defendants in the original suit No. 40615, had agreed to dismiss as to this plaintiff herein for the reason that they had no cause of action against him, and relying upon the statement made by (to) your petitioner by the said Paul Butler, agent and attorney in fact of the said H. C. Hand, your petitioner did not appear and answer in said cause No. 40615, and that your petitioner at the time of the institution of said suit had a good and meritorious defense to said cause of action, and at the time of the rendition of said judgment this plaintiff had a good and meritorious defense to the

·same, and plaintiff here and now alleges that at the commencement of said suit and at the time of the rendition of said judgment the plaintiff and defendants in the original suit, cause No. 40615, practiced fraud upon this plaintiff and recovered the said judgment by accident and mistake, and said accident and mistake were 'the direct acts of all of these ·defendants, their agents and attorneys. And plaintiff further alleges that said fraud, accident, mistake and acts of these defendants were not brought about by any act or negligence or fraud on the part of this plaintiff."

While it is obvious that most of these allegations are mere conclusions, nevertheless they are good as against a general demurrer (see Garza v. Kenedy [Tex. Com. App.] 299 S. W. 231), and in our opinion set forth all nec-·essary elements of a bill of review.

■■ Only the evidence that supports the judgment will be considered. Asked, "Why ·didn't you answer the suit?" Pratt said: ·"Mr. Arnspiger (his agent) told me he had talked to counsel for Mr. Gee (plaintiff in the .suit) and that it was alright and I would not have to come; that everything was settled. As far as that is concerned Mr. Butler (Hand's agent) was present in the St. George Hotel in Dallas when he told me. That is the reason I didn't have any representative here when the cause came up. I knew that I had not assumed any indebtedness and did not owe them anything." Arnspiger (Pratt's agent), testifying in regard to the conversation in the St. George Hotel, said: "While we were talking Mr. Butler told Mr. Pratt that they got Judge Webb (Gee's attorney) and Hamp Abney (Mrs. Hanson's attorney) together in the office and explained it to them exactly and I ·told them there was a written contract and that the parties were not to assume the in-·debtedness but took it subject to the indebtedness, and that I did not want it to go any other way than Mr. Pratt wanted it to go. Mr. Butler said he didn't see how they could hold Mr. Pratt for it. Mr. Butler said he didn't consider it a trade because the contract was not closed. I do not know exactly what Mr. Butler said to Mr. Pratt at that time . about it being necessary or not necessary for him to come up and answer the suit, but that was the meaning of it. He did not think he ·ought to bother about it."

Before the judgments by default were taken, both Butler and Arnspiger explained the situation to the attorneys for Mr. Gee and Mrs. Hanson. Butler said: "Yes, after the ·suit was filed against Mr. Pratt I went to see Mr. Abney, who was the attorney for the defendant Mrs. Hanson in the original suit and who represents her in this suit. . I went to Mr. Abney's office in company with Mr. Arnspiger at one time. I asked Mr. Abney if he would agree to release Mr. Pratt and dismiss the suit in so far as Mr. Pratt was concerned. Mr. Abney said he 'would not release Mr.

Pratt from liability to Mrs. Hanson. Yes, I had a talk with Judge Webb, who represented Mr. Gee in the original suit. Judge Webb said he was willing to do the right thing about it. He was then talking about our request to him to dismiss the suit as against Mr. Pratt in the original suit. That conversation was before the case was tried."

On this point Arnspiger testified:

"Q. Mr. Arnspiger, from what Judge Webb said and Mr. Gee had said and Mr. Butler is that the reason you told Mr. Pratt that they had told you that they did not want to give Mr. Pratt any trouble or take anything they were not entitled to, is that the reason it came up? A. Yes sir.

"Q. Did you tell Mr. Pratt that there was no necessity for him to come up? A. I told him that I did not think it necessary that I had talked to Judge Webb and Mr. Gee and that there was only one man that objected and that was Mr. Abney.

"Q. Were you present at Mr. Abney's office at the time they had the conference? A. Yes sir.

"Questioned by the court: Q. Was the matter of Mr. Pratt's liability discussed at that time? A. Yes sir.

"Q. What did Judge Webb say? A. Mr. Abney jumped up and said there was a deed. I says 'If you want to jump on anybody, jump on me,' Mr. Pratt would not accept the deed or have anything to do with it.

"Q. Did Mr. Abney say anything about it? A. He never did say. Judge Webb took a different view of it. He said for me to see Prof. Gee. I called him over the phone, and he said to see Judge Webb.

"Q. What did Judge Webb say? A. He says, 'I can't do anything unless Gee comes up and tells me what to do.' I said I was going to tell Mr. Pratt the situation. Of course, I thought there would be nothing to it.

"Q. Did Judge Webb say in your presence that he did not think you could hold Mr. Pratt, or they could not? A. He just asked me what the contract was, and I tried to tell him exactly what it was, and I believe I did. At that time Mr. Abney jumped up and said 'Here is the deed.' It stated that he assumed it, but the contract didn't.

"Q. Did Judge Webb at that time state to Mr. Abney that Mr. Pratt was not liable? A. He said it was not a trade. I was the cause of Mr. Pratt not answering the suit."

Among other findings, the trial court said: "The court further finds that said trade was never consummated, and the undisputed evidence shows that a warranty deed from H. C. Hand to J. O. Pratt was never delivered to plaintiff, J. O. Pratt, nor to his agent, Dave Arnspiger, and was at no time prior to the filing of cause No. 40615 in the District Court

of Grayson County, Texas or since the filing of said suit, ever delivered to J. O. Pratt, or his agent, Dave Arnspiger, and has not been up to this time accepted by plaintiff, J. O. Pratt, or by his agent, Dave Arnspiger, and that J. O. Pratt, plaintiff herein, never did at any time assume the payment of said vendor's lien notes against the above described property, which fact was well known to the defendant H. C. Hand, and the court further finds that the judgment was obtained against this plaintiff, J. O. Pratt, in cause No. 40615, wherein J. O. Pratt, H. C. Hand and Clara Hanson were defendants, and L. C. Gee was plaintiff, by accident, mistake and fraud. And the court further finds that the said plaintiff, J. O. Pratt, had a meritorious defense to said suit in cause No. 40615, and that he acted in good faith and upon the advice and information of not only his agent, but the agent of H. C. Hand, in not appearing and answering the said suit cause No. 40615, and that in equity, the said J. O. Pratt is now entitled to have the verdict heretofore rendered in cause No. 40615 set aside, vacated and held for naught in so far as it applies to him."

The evidence, in our opinion, sustains the material findings of the court, but we find no evidence that authorized the conclusions that the judgments were obtained by either accident or mistake, or by fraud, in a sense that involved dishonorable conduct on the part of either litigant or attorney. However, as disclosed by the evidence, before the default judgments were taken, the facts revealing the true situation became known to all parties, that is, Hand was cognizant of the facts originally, being a party to the contract, and the others learned that the tentative agreement for the exchange of lands was never consummated; that the deed from Hand to Pratt embodying the alleged assumption agreement was never delivered; therefore that the basis upon which his liability was sought to be predicated was nonexistent; under these circumstances, we are of opinion that the default judgments were unauthorized, and, in result, inequitable and unjust. The situation must be viewed from Pratt's standpoint. Conscious that the agreement between him and Hand to exchange lands was never consummated, that he had not assumed payment of the Gee and Hanson notes, naturally he felt the injustice of being sued and forced to incur expense to defend a baseless law suit, hence was in a frame of mind to readily yield to the suggestions of Butler and Arnspiger that he need not bother about the matter; under these facts and circumstances, we do not think Pratt was guilty of negligence in failing to answer the suit.

We find no error in the action of the trial court, and affirm the judgment.

Affirmed.